KOLMAN ELY, P.C.
By: W. Charles Sipio, Esquire
Attorney ID #: 026602012
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
wcsipio@kolmanlaw.net

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HOWARD RASKE**<br>13 Summit Square #238<br>Langhorne, PA 19047<br><br>*Plaintiff*,<br><br>vs.<br><br>**DESIGN WITHIN REACH, INC.**<br>c/o National Registered Agents, Inc.<br>160 Greentree Drive<br>Wilmington, DE 19904<br><br>*Defendant*. | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby files the following Complaint against Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against Defendant, his former employer, for unlawful discrimination and retaliation in violation of federal and state law.

## PARTIES

2. Plaintiff is Howard Raske ("Plaintiff"), an adult individual currently residing at the above address.

3. Defendant, Design Within Reach, Inc. ("Defendant"), is believed and therefore averred to be a Delaware corporation with a registered agent for service of process at the above address.

4. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or his job duties.

5. Defendant is an "employer" within the meaning of Title VII because it is engaged in an industry affecting interstate commerce and because they maintained or maintain fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.

## JURISDICTION and VENUE

6. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

7. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions

of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8.   The United States District Court for the District of New Jersey may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

9.   The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

10.   Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the District of New Jersey at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

11. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

12. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII.

13. Plaintiff filed at timely written charge of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") alleging discrimination at No. 530-2016-02869 on or about May 19, 2016.

14. The instant action is timely because it is initiated at least ninety ("90") days after the issuance of a Right to Sue Letter by the EEOC which was mailed on or about November 28, 2016.

15. Plaintiff has exhausted his federal administrative remedies as to the allegations of the instant Complaint at the time of filing.

## FACTUAL BACKGROUND

16. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

17. Plaintiff is a former employee of the Defendant who was unlawfully and pretextually terminated on or about April 1, 2016.

18. Plaintiff is Jewish.

19. Plaintiff began working for the Defendant's outlet located at 55 Hartz Way in Secaucus, New Jersey on or about February 26, 2016.

20. Plaintiff's general manager was Mandy Blanco and his studio manager was Stacy Kratz.

21. Plaintiff's district manager was Jack Fitzgerald.

22. Upon information and belief, Fitzgerald and Blanco no longer work for the company.

23. During Plaintiff's first week of work, he met with Fitzgerald and spoke with him regarding the lack of training he was receiving.

24. Fitzgerald told Plaintiff to think of his position as his "own business" and that he would need to learn on his own.

25. Fitzgerald also brought to Plaintiff's attention that Blanco was extraordinarily difficult to work with and that he should attempt to avoid her as much as possible.

26. During the week of March 14, 2016, Plaintiff approached Blanco and politely asked for two ("2") days off for Passover.

27. In 2016, Passover began on April 22, 2016.

28. Blanco's reaction to Plaintiff was incredibly discriminatory.

29. Blanco said to Plaintiff, "are you really that religious?"

30.     In an unbelievably condescending manner, Blanco then said to Plaintiff "will you be taking off all Jewish holidays?"

31.     Plaintiff received the days off, but the work environment became worse with Blanco thereafter.

32.     On or about the week of March 21, 2016, all of the employees were drummed into the lunchroom one at a time by Blanco.

33.     Blanco began to interrogate and belittle Plaintiff by accusing her of leaving a lunch table dirty.

34.     Blanco was belligerent enough that Plaintiff began to feel extremely uncomfortable.

35.     In another incident, a customer came in who had purchased a bed at another location owned by the Defendant.

36.     Plaintiff had the bed available to sell for approximately $1000.00 less insofar as he worked at an outlet location.

37.     The customer purchased the bed from Plaintiff for approximately $4000.00.

38.     Kratz told Plaintiff she had the authority to cancel the customer's previous order at the other store.

39. The original salesperson from the other store contacted the customer and convinced him to buy the bed from him instead of Plaintiff, which was against company policy.

40. Plaintiff made a complaint to Blanco, who refused to report the incident to Fitzgerald which resulted in Plaintiff losing a $4000.00 sale.

41. Plaintiff reached out to Fitzgerald and he said there was nothing he could do about the sale.

42. Fitzgerald told Plaintiff that he had "no power" within the company and the outlet store where Plaintiff was employed brought a lot of money in for the Defendant.

43. Fitzgerald told Plaintiff that, for that reason, upper levels of company management let Blanco do whatever she pleased, despite the fact that the company was aware she had offensive attitude towards employees.

44. In effect, Fitzgerald told Plaintiff that Blanco was "off limits."

45. On or about March 30, 2016, Plaintiff requested a personal meeting with Fitzgerald to discuss his concerns with the company.

46. Fitzgerald arrived at the outlet in Secaucus at around 1:00 PM on or about March 30, 2016.

47. Plaintiff and Fitzgerald went out to a coffee shop.

48. Plaintiff explained everything that had happened to him during his first month on the job.

49. Fitzgerald reiterated that the company knew how offensive and difficult Blanco was towards other employees, but they would not take any action because she turned a significant profit for the store.

50. Fitzgerald relayed to Plaintiff that Blanco was indignant to other employees and warehouse workers, and Fitzgerald explained Plaintiff that this was why there was a higher than normal employee turnover at the Secaucus store.

51. Once again, Fitzgerald told Plaintiff to stay away from her as much as possible.

52. On another occasion, Plaintiff spoke with a customer via telephone who was looking to purchase a specific dining room table.

53. The table was not available, but Plaintiff told the customer he would call as soon as one came into stock.

54. The customer asked if Blanco was available and she was not in at the time.

55. When Plaintiff came into work on or about Friday April 1, 2016, he noticed that the table was in the showroom.

56. Plaintiff took pictures of the table and sent them to the customer.

57. The customer came in a few hours later with her husband.

58. She was very happy with the photos and Plaintiff's prompt follow up.

59. Plaintiff then approached Blanco who was working in the warehouse area at the time.

60. Plaintiff told Blanco that when he originally took the phone call, the customer asked if she was available.

61. Plaintiff told Blanco the customer's name and she stated that she had dealt with them for years.

62. Blanco was in an awful mood when he approached her and she directed Plaintiff to take care of the customers.

63. Plaintiff informed Blanco, specifically, that the customers asked to see her.

64. Blanco had a negative response that even the customer had noticed by remarking "she did not seem like herself."

65. Blanco permitted Plaintiff to handle the sale and ring it up under his own name.

66. When the customer left the store, Blanco became uncontrollably enraged.

67. She accused Plaintiff of "stealing" her customers and that his actions bordered on "insubordination."

68. Plaintiff asked Blanco, very specifically, why then she asked Plaintiff to ring up the sale under his own name.

69. Blanco did not provide any response, which was a silent and tacit admission by her that Plaintiff had done nothing wrong.

70. Plaintiff went outside at approximately 1:57 PM to call Fitzgerald.

71. Once again, Plaintiff expressed his concern regarding Blanco's behavior and said, specifically, that he believed Blanco was creating a hostile working environment.

72. Fitzgerald told Plaintiff to "relax" and "stay calm."

73. Plaintiff requested a transfer to the Brooklyn location since his sales for the previous month exceeded his draw by over twenty thousand ("$20,000.00") dollars.

74. Plaintiff's understanding at the time was that his sales numbers were uncommon for new employees.

75. Fitzgerald told Plaintiff that he would think about the transfer request and that they would talk again on or about Monday April 4, 2016.

76. At approximately, 2:14 PM, Plaintiff checked the company's website and saw a job posting for "Account Executive."

77. Plaintiff then proceeding to go back to help other customers.

78. At approximately 3:54 PM, Plaintiff sent Fitzgerald a text message explaining that he saw an open position in Brooklyn on the website and that he was interested in the same.

79. Plaintiff then told Fitzgerald he would call him on the night of Sunday, April 3, 2016 to discuss.

80. This would be the last time Plaintiff spoke with Fitzgerald.

81. At approximately 4:30 PM on April 1, 2016, Plaintiff was called into Blanco's office.

82. Present in the office aside from Blanco was Kratz and Christie Zekanovic from Human Resources who appeared telephonically by way of speakerphone.

83. Blanco told Plaintiff that he was being fired.

84. Plaintiff stood up and walked out.

85. Blanco and Kratz further belittled Plaintiff by following him to his desk where he eventually picked up his briefcase and left the building.

86. Plaintiff was pretextually terminated because of his request for a religious accommodation and his religion.

87. Plaintiff was retaliated against by Defendant for making the request for a religious accommodation.

88. Each time Plaintiff spoke with Fitzgerald, he told Plaintiff that their conversations would be held in confidence.

89. However, upon information and belief, after Plaintiff mentioned to Fitzgerald that he believed Blanco was creating a hostile work environment, he passed that information along to human resources.

11

90. Thereafter, Plaintiff was terminated by Blanco, which was a further act of retaliation.

## COUNT I
### Title VII Discrimination (Religion and Retaliation)

91. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

92. The foregoing conduct by the Defendant constitutes discrimination against Plaintiff on the basis of his religion.

93. The foregoing conduct by the Defendant constitutes retaliation against Plaintiff insofar as he engaged in protected activity.

94. Additionally, and/or alternatively, pursuant to Fed.R.Civ.P. 8(d), Plaintiff was exposed to a hostile-work environment that Defendant failed to rectify while knowing of its existence.

95. As a result of the Defendant's unlawful discrimination and retaliation the Plaintiff has suffered damages as set forth herein.

## COUNT II
### New Jersey Law Against Discrimination ("NJLAD")

96. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

97. The foregoing discrimination and retaliation by Defendant also violates the NJLAD.

98. As a result of Defendant's violations of the NJLAD, Plaintiff has suffered damages, as set forth herein.

## COUNT III
### Tortious Interference with a Prospective Economic Benefit

99. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

100. At all times relevant hereto, Plaintiff sought to develop an economic relationship with a customer that would have led to a financial benefit.

101. At all times relevant hereto, the Defendant intentionally interfered with Plaintiff's economic relationship by failing to enforce its own policies.

102. At all times relevant hereto, Defendant's interference caused the loss of the prospective gain in the amount of commissions due and owing on a $4000.00 sale and said interference caused damage to the Plaintiff.

## COUNT IV
### Negligent Hiring, Retention and Supervision

103. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

104. Under New Jersey law, an exception to the "Workers' Compensation bar" exists when an employer covered by the state's statutory workers' compensation scheme acts intentionally. *See* N.J.S.A. § 34:15-8 (If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, <u>except for intentional wrong</u>.)

105. At all times relevant here, Defendant knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of Blanco and could reasonably have foreseen that such qualities created a risk of harm to other persons.

106. Through the negligence of the Defendant in hiring Blanco, her incompetence, unfitness or dangerous characteristics proximately caused injury to the Plaintiff.

107. Defendant's actions in hiring, retaining and failing to properly supervise Blanco were intentional and knowing in that they were motivated by profit with willful disregard for the safety and well-being of employees such as the Plaintiff.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendant and that it enter an Order as follows:

a. Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on any basis prohibited under applicable federal and state law;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on any basis prohibited under applicable federal and state law and be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to his by Defendant's actions as permitted by applicable law;

e. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

f. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

g. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

h. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law;

i. Plaintiff is to be granted such additional injunctive or other relief as he may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action;

j. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

k. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption

of the Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KOLMAN ELY, P.C.**

/s/ W. Charles Sipio
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
wcsipio@kolmanlaw.net

*Attorney for Plaintiff*

Dated: December 6, 2016

## **CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I, W. Charles Sipio, Esquire, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office that the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

              /s/ W. Charles Sipio
              W. Charles Sipio, Esquire

Dated:  December 6, 2016